UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHI SUE VALDEZ,

       Plaintiff,

v.                                                           Case No. 8:14-cv-1412-T-AEP

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

       Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.     Procedural Background**

Plaintiff filed an application for SSI. (Tr. 157.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 96-99, 101-102.) Plaintiff then requested an administrative hearing. (Tr. 106-113.) Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 41-75.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 34.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-3.) Plaintiff then timely filed a complaint with this Court. (Dkt. No. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1958, claimed disability beginning December 16, 2010.[2]  (Tr. 79, 157.)  Plaintiff has a twelfth-grade education.  (Tr. 45.)  Plaintiff did not have past relevant work.  (Tr. 33.)  Plaintiff alleged disability due to major depressive disorder recurrent with psychotic features, bipolar disorder, obesity, Grave's disease, and generalized osteoarthritis (low-back, hips, knees, and arms).  (Tr. 23, 46-57 179.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: major depressive disorder with psychotic features, diabetes, degenerative disc disease of the lumbar spine, and degenerative joint disease of the right and left knees.  (Tr. 23.)  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to:

> [P]erform less than the full range of light work as defined in 20 CFR 416.967(b). The claimant remains able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for 1 hour at a time for a total of 6 hours in an 8-hour workday and is able to sit for 6 hours in an 8-hour workday. She is able to push/pull 20 pounds occasionally and 10 pounds frequently. The claimant is able to understand, remember and carry out simple step-by-step instructions, interact appropriately with supervisors, coworkers, and occasionally the general public. She remains able to maintain attention and concentration for 2 hours at a time and can adapt to routine changes in the workplace.

(Tr. 26.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC.  (Tr. 31.)

---

[2] Plaintiff maintains her disability began on November 15, 1997.  (Tr. 157.)

Considering Plaintiff's noted impairments, RFC, and the assessment of a vocational expert ("VE"), the ALJ determined that although Plaintiff did not have past relevant work, Plaintiff possessed the capability to perform other jobs existing in significant numbers in the national economy, such as a small products assembler, parking lot attendant, and eyeglass assembler.  (Tr. 33-34.)   Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 34.)

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and, considering the RFC assessment, whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the

evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. *Id.* A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 1035 (2005) (citation omitted). The Commissioner must apply the correct law and demonstrate that the Commissioner has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971) (per curiam).[3] Similarly, it is the responsibility of the Commissioner to draw

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## III.

Plaintiff challenges the ALJ's decision on four grounds:

(1)     Whether the ALJ properly assessed Plaintiff's subjective complaints.
(2)     Whether the ALJ properly considered medical opinion evidence.
(3)     Whether the ALJ's hypothetical accurately comprised Plaintiff's impairments.
(4)     Whether the VE's testimony otherwise constitutes substantial evidence.

For the reasons that follow, none of these contentions warrant reversal.

### A.  The ALJ Properly Assessed Plaintiff's Subjective Complaints

Plaintiff contends the ALJ improperly assessed Plaintiff's subjective plaints. Upon review, in evaluating Plaintiff's subjective symptoms and credibility the ALJ employed proper legal standards and his decision is supported by substantial evidence.

In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 416.929. In social security disability cases, credibility determinations fall within the province of the ALJ.

*Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Typically, the ALJ makes credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). To establish a disability based on testimony of pain and other symptoms, the claimant must show (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged symptoms or (3) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. § 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562.

The ALJ appropriately applied the three-prong test laid out by the Eleventh Circuit. (Tr. 26-32). *See Wilson*, 284 F.3d at 1225; *Holt*, 921 F.2d at 1223. In applying the standard's second prong, the ALJ found that the objective evidence of record did not confirm the severity of the alleged pain. (Tr. 26.) Substantial evidence supports his determination. The ALJ's decision notes, among other things, a lack of evidence of nerve root compression in Plaintiff's back, a lack of evidence of episodes of decompensation, and a lack of end organ damage from diabetes. (Tr. 24.) As the ALJ also noted, the record evidence of Plaintiff's back and knee impairments are remote in time relative to the application date. (Tr. 32, 293-300.) A February 2011 medical evaluation by Dr. Hector Guevara also notes no significant abnormalities, "normal exercise tolerance secondary to chronic back pain," and that further imaging studies would be needed to correlate with Plaintiff's symptoms. (Tr. 442-43.) The objective medical evidence regarding the severity of Plaintiff's

mental impairments is likewise scarce.  In September 2010 Plaintiff reported no longer hearing or seeing things, in November 2010 reported she was not experiencing hallucinations, and in January 2011 stated she was taking medication as prescribed and denied having any problems.  (Tr. 453, 477, 481.)  An October 2010 record also notes Plaintiff's belief that her hallucinations and delusions were responding well to her prescribed medication, Risperdal.  (Tr. 485.) Psychiatric observations from March 2011 further note normal appearance, mood, affect, and thought content. (Tr. 470.)  The record is, ultimately, devoid of objective medical evidence confirming the severity of Plaintiff's allegations.

Turning to the third prong relating to Plaintiff's subjective complaints, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible to the extent they were inconsistent with Plaintiff's RFC.  (Tr. 32.)  The ALJ's decision to not fully credit Plaintiff's subjective complaints in this regard is supported by substantial evidence.  In making a credibility determination, the ALJ may consider whether any inconsistencies exist in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence.  *See Foote*, 67 F.3d at 1562 (noting that a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record); 20 C.F.R. § 416.929(c)(4); *see also Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (discussing an ALJ's treatment of evidence otherwise inconsistent with the record).

Here, as the ALJ highlighted, such inconsistencies exist and substantial evidence supports the ALJ's reliance on them in making his credibility finding.  (Tr. 32.) The ALJ's credibility determination appropriately hinged on conflicts between Plaintiff's statements and the rest of the

evidence.  *See Foote*, 67 F.3d at 1562.  Plaintiff testified to the following as preventing her from obtaining and maintaining employment: hip problems (referencing a feeling of a problem disc), leg pain, inability to sleep, shooting pain, and hand numbness (all of which occur every day), as well as her diabetes being "not under control," hearing voices, being affected by depression, and having social problems that affect her ability to work.  (Tr. 40-69.)  Yet, as noted above, Dr. Guevara's February 2011 examination revealed normal social interaction, normal musculoskeletal function (including normal grip strength in both hands), and normal exercise tolerance subject to chronic back pain.  (Tr. 440-443.)  Other office visits by Plaintiff corroborate the relatively diminished magnitude of Plaintiff's complaints, such as her January 2011 visit to her diabetes doctor, who noted no musculoskeletal symptoms and normal psychiatric observations.  (Tr. 383-384.)  Moreover, Plaintiff's daily activities and living situation suggest Plaintiff's social functioning is not inhibited to the extent alleged.  For example, Plaintiff reported living with her ex-husband (Tr. 207), retaining the ability to do household chores and shop (Tr. 209-10), spending time with others in person (*e.g.*, going to the store) and on the phone (Tr. 211.).  In sum, ample evidence of record supports the ALJ's determination that Plaintiff's treatment history is incompatible with her allegations.  (Tr. 32)  *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (finding substantial evidence supported the ALJ's conclusion that the claimant was not disabled when the ALJ found the claimant not credible because the claimant's subjective complaints of pain were inconsistent with the clinical findings of record).

Finally, Plaintiff alleges that the ALJ erred by not finding Plaintiff fully credible due to use of alcohol and non-compliance with treatment, as well as in not expressly mentioning the regulatory factors for evaluating credibility. As to the former contention, it is unclear from the ALJ's decision whether the ALJ relied on Plaintiff's alcohol consumption in basing his credibility finding.[4]  Plaintiff testified to no longer drinking due to diabetes and medication, stating she has not drank for a couple of years now.  (Tr. 64.)  In September 2010, however, Plaintiff admitted to drinking every two months up to one bottle of wine at a time, and records as late as March 2011 note episodic alcohol abuse.  (Tr. 453, 471.)  Therefore, to the extent the ALJ did rely on this apparent inconsistency in his credibility determination, the ALJ's reliance is supported by substantial evidence because a factual basis appears in the record, and, moreover because there is no indication that the ALJ was relying on noncompliance as the sole basis for the denial of disability benefits.  *Ellison*, 355 F.3d at 1275; cf. *Dawkins*, 848 F.2d at 1213-14; *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986).

As to the latter contention, the law is clear that an ALJ need not cite particular phrases or formulations.  *Dyer*, 395 F.3d at 1210.  Thus, for the reasons stated above, the ALJ's decision to not fully credit Plaintiff's subjective complaints is sufficiently detailed and supported by substantial evidence.

**B.  The ALJ Properly Considered the Medical Opinion Evidence**

Plaintiff contends the ALJ erred by relying solely on the opinion of non-treating psychologists as well as inappropriately ignoring some or all of the other medical opinions of

---

[4] An ALJ does not commit reversible error by relying on such evidence unless failure to seek treatment is the sole basis of the ALJ's denial of disability.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988) ("The problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that appellant was not entitled to benefits on appellant's failure to follow prescribed medical treatment.").

record.  For the reasons that follow, the ALJ's analysis of the medical opinions of record employed proper legal standards and is supported by substantial evidence.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted).  The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.  See 20 C.F.R. § 416.927.  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. § 416.927(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. § 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. § 416.927(c)(4).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

i.  <u>Dr. Shaub</u>

Plaintiff contends the ALJ completely disregarded Dr. Brian Shaub's opinion. This contention is without merit on two grounds. First, Plaintiff offers no elaboration or argument on the merits of this assertion in her memorandum, and it is thus waived. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir.1995)). This aside, good cause exists because, as expressly mentioned by the ALJ, Dr. Shaub's opinion is not bolstered by the evidence and the evidence supports a contrary conclusion. Indeed, Plaintiff's own testimony – that she can lift 15-20 pounds, likes to walk and does not have problems walking except for her legs occasionally giving out and going numb after an hour (Tr. 49-51) – contrast sharply with Dr. Shaub's opinion that Plaintiff cannot lift any weight or walk during a normal work day. (Tr. 508.) These facts, in addition to other evidence of record indicating Plaintiff has normal gait, normal arm and leg strength, normal range of motion, the ability to get on and off an exam table and chair without difficulty, the ability to walk on her toes and heels, and the ability to squat (Tr. 442-46), provide good cause for the ALJ to disregard Dr. Shaub's opinion. *See Magill v. Comm'r of Soc. Sec.*, 147 F. App'x 92, 94 (11th Cir. 2005) ("[A]n ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion.").

ii.   Dr. Cameron

Plaintiff also contends the ALJ erred in his treatment of Dr. Rhonda Cameron by failing to explicitly grant weight to Dr. Cameron's assigned GAF score. This contention, too, is without merit. Even assuming the GAF score relates to Plaintiff's functional capacity during the relevant period, and further assuming the GAF score issued by nurse practitioner Wurz can be ascribed to Dr. Cameron, the subject GAF score indicates the clinician's assessment of Plaintiff's overall functioning but does not itself reveal a particular type of limitation and does not constitute an

assessment of Plaintiff's ability to work.  *See Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978 *3 (M.D. Fla. May 8, 2008).  For this reason, the Commissioner has "declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorder listing." *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (per curiam) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (internal quotations omitted)).  Therefore, contrary to Plaintiff's assertion, Plaintiff's assigned GAF score is not dispositive of Plaintiff's SSI application.

Moreover, the ALJ properly addressed the GAF score as part of the record evidence. Plaintiff refers to Dr. Cameron as a treating physician.  Plaintiff, however, mischaracterizes the documented relationship between the two, who only appear to have met twice—in August 2010 and March 2012.  (Tr. 613, 667.)  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician"); *Tipton v. Astrue*, 2011 WL 164326, at *7 (M.D. Fla. Jan. 19, 2011) (finding physician who saw claimant twice was not a treating source). Nevertheless, even if Dr. Cameron were granted treating physician status, good cause existed to disregard Dr. Cameron's assigned GAF score to the extent it conflicts with the RFC, because, as explained more fully elsewhere, Plaintiff's GAF score, to the extent it speaks to Plaintiff's inability to function in the workplace, does not comport with the evidentiary record as a whole.[5]

    iii.   <u>Nurse Practitioner Wurz</u>

Plaintiff submits the ALJ erred in failing to properly consider the opinions of Louise Wurz, ARNP.  Plaintiff maintains Ms. Wurz's opinions, delivered via multiple low GAF scores indicating

---

[5] It is also worth reiterating that Plaintiff's GAF score was, at least in part, based on subjective complaints (Tr. 456, 596, 612, 661-64), and that the ALJ, as described above, found Plaintiff not credible.

serious to moderate symptoms, should have been given great weight because she was the treating source with the most longitudinal history with Plaintiff. Plaintiff's assertions fail on two grounds. First, as described immediately above, heavy reliance on GAF scores in disability determinations is disfavored. Second, as Plaintiff appears to concede, nurse practitioners are not considered "acceptable medical sources." SSR 06-03P (S.S.A. Aug. 9, 2006). Nevertheless, their observations should be evaluated along with the relevant evidence of record. Here, it is clear from ALJ's decision that he adequately considered Ms. Wurz's observations as part of the greater evidentiary record. In fact, the ALJ's decision expressly addresses Ms. Wurz's observations – such as Plaintiff's intact memory, lack of hallucinations at the time, good hygiene and grooming, appropriate social interaction, cooperative attitude and overall prognosis of fair to good. (Tr. 28-29.) That the ALJ declined to grant controlling weight to Ms. Wurz's additional observations that Plaintiff has major depression with psychotic features, and speculation that Plaintiff's hallucinations may prove too distracting for her to function in a traditional work setting, is not itself error. The ALJ may reject any opinion when the evidence supports a contrary conclusion. *See Sryock*, 764 F.2d at 835.

      iv.    <u>Dr. Carter</u>

Plaintiff next argues the ALJ erred in his evaluation and treatment of Dr. Deborah Carter's opinions. The ALJ's decision, however, employed proper legal standards and is supported by substantial evidence.

Plaintiff argues the ALJ erred in considering non-treating psychologist Dr. Carter's opinion alone and in using it to discount a treating-physician opinion, in giving great weight to Dr. Carter, and also in ignoring portions of Dr. Carter's opinion that do not comport with the crafted RFC. These arguments are meritless. Plaintiff's first contention can be easily dispensed with – as noted

at length above – the ALJ did not consider Dr. Carter's opinion alone in creating the RFC nor in discounting the opinion of a treating physician. Instead, the ALJ's decision makes clear that various evidentiary pieces were considered—ranging from Plaintiff's testimony and reported activities to medical opinions and observations from multiple sources. (Tr. 23-34.) Plaintiff's second argument is also without merit—the ALJ may consider a variety of factors in assigning weight and is not limited to the examining and treating relationship. *See Sryock*, 764 F.2d at 835 ("The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."); 20 C.F.R. § 416.927(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.").

Plaintiff's third and final argument also fails. Plaintiff appears to argue the ALJ erred in not accounting for certain moderate limitations identified in Section I of Dr. Carter's Mental Residual Functional Capacity Assessment form. (Tr. 489-90.) The ALJ's RFC, however, need not be identical to a particular assessment of record or incorporate the precise limitations set forth by a physician. *See* 20 C.F.R. §416.945(a)(3) (stating that the ALJ must base the RFC on all of the relevant medical and other evidence (emphasis added)). Moreover, the ALJ's decision is consistent with Section III of the form, the final functional capacity assessment, which concludes that Plaintiff retains the capacity to understand, remember, carry out routine instructions or procedures, make day-to-day decisions, socialize appropriately, and concentrate to complete tasks/ activities. (Tr. 491.) This determination comports with and supports Plaintiff's RFC, and, as detailed throughout, is consistent with and corroborated by other evidence of record.

### C. The ALJ's Hypothetical Accurately Comprised Plaintiff's Impairments and the VE's Testimony

Plaintiff contends the ALJ's hypothetical did not accurately describe Plaintiff's impairments and further that the VE's testimony is vague and contradictory. For the reasons that follow, the ALJ's hypothetical was proper and the VE's testimony constitutes substantial evidence.

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips,* 357 F.3d at 1239. If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in the national economy which, given the claimant's impairments, the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citation omitted); *see Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted).

There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Grids and by the use of a VE. *Phillips*, 357 F.3d at 1239-40. If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that takes into account all of the claimant's impairments. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007)(citation omitted). When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). For a

VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

Turning first to Plaintiff's contention that the hypothetical posed did not account for all of Plaintiff's impairments, upon review of the record and the ALJ's decision, the hypothetical posed indeed does account for all Plaintiff's impairments.  Plaintiff argues that because the ALJ found Plaintiff to have moderate limitations in concentration, persistence and pace and in social functioning, that the hypothetical posed based on Plaintiff's RFC – limiting Plaintiff to simple step-by-step instructions and being able to concentrate and maintain attention for two hours at a time and function socially – is not sufficiently encompassing.  Because the ALJ's hypothetical accurately tracks the RFC (Tr. 26), this argument amounts to a collateral attack on the ALJ's RFC, and thus the material question before the Court is whether substantial evidence supports the ALJ's determination that the above-mentioned difficulties do not preclude Plaintiff from performing simple step-by-step tasks, concentrating for two hours at a time, and retaining the ability to exhibit appropriate social function at work.

A review of the record shows this to be the case.  As the Commissioner contends, Plaintiff reported conducting activities of daily living without assistance (Tr. 422), was observed by Dr. Robert Young in February 2011 as having no difficulty maintaining attention and concentration and never displaying distractibility (Tr. 422), and reported her main reason for applying for SSI was her physical impairments.  (Tr. 423.)  In addition to the aforementioned observations of Dr. Shaub, nurse-prationer Wurz and Dr. Carter, all of which appear to support Plaintiff's retained ability to function socially (Tr. 643, 611-626, 489-90), Dr. Judith LaMarche opined in February 2011 that Plaintiff had no difficulties in social functioning and only mild difficulties in maintaining concentration, persistence, or pace.  (Tr. 435.)  Therefore, because substantial evidence supports

the ALJ's RFC, and because the hypothetical posed to the ALJ accurately reflects the RFC, the ALJ's testimony constitutes substantial evidence.[6] *See Wilson*, 284 F.3d at 1227.

Turning lastly to Plaintiffs additional argument that the ALJ's hypothetical is incongruent with the VE's illustrative Dictionary of Occupational Titles ("DOT") occupations.  (Tr. 70-71.) Specifically, Plaintiff contends that the RFC restrictions of simple step-by-step tasks and two-hour concentration limitation conflicts with the jobs of small parts assembler (DOT 706.684-002), parking lot attendant(DOT 915.473-010), and eye glass assembler (DOT 713.684-014).  Plaintiff also asserts legal error in the ALJ's failure to ask the VE whether his testimony conflicts with the DOT.

The purpose of SSR 00–4p is to clarify the standards for use of a VE at a hearing. The ruling requires the ALJ to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [the VE] . . . and information in the [DOT]." SSR 00–4p. The ruling reads:

> When there is an apparent unresolved conflict between VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator's will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE . . . automatically "trumps" when

---

[6] Plaintiff's appeal to *Winschel* is without merit.  *See* 631 F.3d at 1180.  As the Commissioner correctly submits, established limitations and deficiencies in concentration, persistence, or pace can be sufficiently accounted for in a claimant's RFC by restrictions to simple, routine, repetitive, or unskilled work, if, as here, medical evidence demonstrates Plaintiff's ability to function and work is unaffected.  *See, e.g.*, *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012) ("Because the medical evidence demonstrated that [claimant] could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments by limiting the hypothetical to include only unskilled work"); *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (finding ALJ accounted for claimant's mental difficulties in the hypothetical question by limiting him to simple, routine, repetitive tasks); *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 635 (11th Cir. 2011) (finding that "simple, unskilled work sufficiently accounted for limitations in concentration, persistence and pace" where the medical evidence demonstrated that claimant could perform such activities).

there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00–4p.

In this Circuit, however, the law does not equivocate that a VE's testimony trumps the DOT to the extent the two are inconsistent. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir.1999); *see also Jones v. Comm'r of Soc. Sec*., 423 F. App'x 936, 939 (11th Cir. 2011) (citing Jones, 190 F.3d at 122-30)); *Miller v. Comm'r of Soc. Sec*., 246 F. App'x 660, 662 (11th Cir. 2007) ("The Commissioner correctly responds that agency rulings do[ ] not bind this [C]ourt." (quotations and citations omitted)); *but see Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1303 (M.D. Fla. 2006) (citing decisions from other circuits). This remains so, because, as this Court recently noted in *Hobbs v. Colvin*, agency rulings do not bind this tribunal. No. 8:13-CV-3233-T-24, 2015 WL 628763, at *4 (M.D. Fla. Feb. 12, 2015) (citing *Miller*, 246 F. App'x at 662).

Plaintiff's appeal to SSR 00-4p thus fails on several grounds. First, Plaintiff's position presupposes, at a minimum, an apparent conflict between the VE's testimony and the DOT. Upon review of the record, however, no such conflicts exist. Plaintiff's ability to concentrate for two hours does not directly conflict with any job cited by the VE. *See* POMS DI 25020.010(B)(2)(a) ("The ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure).") Moreover, no authority supports Plaintiff's position that Plaintiff's "simple step-by-step" limitation is incompatible with specific vocational preparation 2 and reasoning level R2 designations that accompany the jobs. *Cf. Arend v. Astrue*, No. 8:11-CV-771-T-DNF, 2012 WL 3264909, at *6 (M.D. Fla. Aug. 10, 2012) ("The ALJ limited Plaintiff to "1–2 step routine and repetitive tasks" which is consistent with the DOT description for the ticket checker position as Reasoning Level

3." (internal quotations omitted)).  Finally, Plaintiff's restriction of occasional interaction with the general public does not undermine Plaintiff's ability to perform the job of parking lot attendant, DOT 915.473-010.  The parking-lot attendant position exists in various forms and functions per the DOT description, and, as expressed by the VE, Plaintiff would be best suited for "the boothed in type with air conditioning." (Tr. 71.)  DOT 915.473-010.  Because the DOT description for this occupation expressly contemplates occasional interaction with the general public, DOT 915.473-010, 1991 WL 687865 (noting occasional talking and hearing up to 1/3 of the time), and because it contains functions that otherwise fall within Plaintiff's RFC, it is not factually incompatible with Plaintiff's RFC and the VE's testimony.

Furthermore, even assuming such a conflict, the law in this Circuit is clear that the VE's testimony trumps the DOT.  *See Jones*, 190 F.3d at 1229-30.  Therefore, the VE's testimony – that Plaintiff can perform employment such as small products assembler (DOT 706.684-022) requiring SVP 2 with 3,200 jobs regionally and 500,000 nationally, boothed-in parking lot attendant (DOT 915.473-010) requiring SVP 2 with 780 jobs regionally and 126,000 nationally, and eye glass frames assembler (DOT 713.684-014) requiring SVP 2 with 800 jobs regionally and 127,000 nationally – was appropriately considered by the ALJ and serves as substantial evidence in support of the ALJ's determination that jobs Plaintiff can perform exist in significant numbers in the national economy. (*See* Tr. 33.)

**IV.**

Accordingly, after due consideration and for the foregoing reasons, it is hereby ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of September, 2015.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record